**IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **FRED APPLEWHITE, an individual;<br>RHONDA BRICE-HARRIS, an individual;<br>KEVIN DICERBO, an individual;<br>LISHA HENDERSON, an individual;<br>FANTASIA HILLIARD, an individual;<br>ANTHONY JONES, an individual;<br>LUTISHA ROSE MCGREGOR, an individual;<br>SYBIL NIXON, an individual;<br>GIANNA VENEGAS, an individual;<br>CHRYSTAL WILLIAMS, an individual;<br>and on behalf of others similarly situated;<br><br>Plaintiffs,<br>v.<br><br>JGW DEBT SETTLEMENT SERVICES LLC, a Nevada limited liability company;<br>THE J.G. WENTWORTH COMPANY, a Delaware corporation;<br>JG WENTWORTH COMPANY LLC, a business entity of unknown organization;<br>ATWAVE LLC, a New York limited liability company;<br>DARBIAN MEDIA LLC, a Delaware limited liability company;<br>DIRECT AGENTS LLC, a Delaware limited liability company;<br>DM, a business entity of unknown organization; and DOES 1-1,000;<br><br>Defendants.** | **Case No.:_______________**<br><br>**CLASS ACTION** |

**<u>CLASS ACTION COMPLAINT</u>**

Plaintiffs FRED APPLEWHITE, RHONDA BRICE-HARRIS, KEVIN DICERBO, LISHA HENDERSON, FANTASIA HILLIARD, ANTHONY JONES, LUTISHA ROSE MCGREGOR, SYBIL NIXON, GIANNA VENEGAS, and CHRYSTAL WILLIAMS (collectively "Plaintiffs") – all California residents – bring this Action, individually and on behalf of a Class of other similarly-situated Californians (as defined herein), against Defendants

JGW DEBT SETTLEMENT LLC, THE J.G. WENTWORTH COMPANY, and JG WENTWORTH COMPANY LLC (collectively "JGW") for statutory liquidated damages for advertising in unlawful unsolicited commercial emails (colloquially "spams"), in violation of Cal. Business & Professions Code § 17529.5 ("Section 17529.5"). Thus, this lawsuit is about *spam emails* advertising JGW sent over the Internet to Plaintiffs' and putative Class members' email addresses; it has nothing whatsoever to do with *third-party publications on JGW's (or anyone else's) websites*.

Plaintiffs also sue JGW's marketing partners/agents for aiding and abetting, or conspiring to aid and abet, JGW's unlawful "spamvertising."

Plaintiffs allege as follows upon personal knowledge as to themselves and their own acts and experiences, and upon information and belief, including investigation conducted by their attorneys, as to all other matters.

## I. CALIFORNIA'S ANTI-SPAM LAW

1. The substantive law in this Action is California's robust Anti-Spam Law, Cal. Business & Professions Code § 17529.5 ("Section 17529.5"), which regulates California "spamvertisers" *and* spams sent to California residents.

2. California enacted Section 17529 in September 2003, set to go into effect on January 1, 2004. As originally enacted, Section 17529.2 prohibited all spam, Section 17529.5 prohibited false and deceptive spam, and Section 17529.8 defined liquidated damages for both.

3. However, shortly thereafter, Congress passed the federal CAN-SPAM Act, codified mostly at 15 U.S.C. § 7701 *et seq* and also at 18 U.S.C. § 1037. The CAN-SPAM Act – which also took effect on January 1, 2004 – preempts state anti-spam laws except for falsity and deception. 15 U.S.C. § 7707(b)(1). (Courts subsequently held that the falsity or deception in a spam must be material to avoid preemption.) As a result, Section 17529.2 was preempted, and 17529.8 was also preempted because 17529.8 was not limited to falsity and deception.

4. Recognizing that Section 17529.5 survived preemption but did not have a provision for damages, California amended Section 17529.5 in September 2004, set to go into effect on

January 1, 2005 (Senate Bill 1457), to incorporate the damages provision from 17529.8 and create a standalone subsection that is not preempted. As it now stands, and as it has stood since 2005:

5. Section 17529.5 prohibits advertising in unsolicited commercial email advertisements aka "spams" that include: a) Third parties' domain names without permission; b) Materially false, misrepresented, and/or forged information contained in or accompanying the email headers; and/or c) Subject Lines that a person knows are likely to mislead a reasonable recipient as to the contents or subject matter of the spams. Cal. Bus. & Prof. Code § 17529.5(a).

6. Advertisers (i.e. the persons or entities whose products and services are being advertised) are strictly liable for *advertising in* unlawful spams under Section 17529.5, even if they engage or otherwise associate with someone(s) else who are involved with *sending* (or assisting with the sending of) the spams. *Id.* at § 17529(j), (k); *Greenberg v. Digital Media Solutions LLC*, 65 Cal. App. 5th 909, 920 (1st Dist. 2021), citing *Hypertouch Inc. v. ValueClick Inc. et al*, 192 Cal. App. 4th 805, 820-21 (2d Dist. 2011).

7. Nothing in Section 17529.5 prohibits liability for spammers for aiding and abetting an advertiser's violations of Section 17529.5. Nothing in Section 17529.5 prohibits liability for spam networks for conspiring with spammers to aid and abet an Advertiser's violations of Section 17529.5.

8. Spam recipients are not required to allege or prove scienter, reliance, or actual damages (i.e. common-law fraud) to have standing to bring claims. Cal. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820.

9. Spams materially violate Section 17529.5(a)(2) – and so plaintiffs' claims are not preempted by the federal CAN-SPAM Act – if the spams are sent from domain names that do not identify the *actual senders* on their faces and are not readily traceable to the *actual senders* by querying a publicly available database such as WHOIS, even if the bodies of the spams identify the *advertiser*. *Balsam v. Trancos Inc.*, 203 Cal. App. 4th 1083, 1101 and n.16 (1st Dist. 2012); *Greenberg*, 65 Cal. App. 5th at 919-920.

10. The statute sets liquidated damages at $1,000 per spam, and the California court of appeal affirmed in *Balsam* that this amount is proper and valid.

11. However, the statutory liquidated damages can be reduced *if* defendants can prove that they established and implemented reasonably effective practices and procedures to prevent unlawful spamming. Cal. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii), (b)(2).

12. In fact, violating Section 17529.5 is a crime punishable by imprisonment in a California county jail. *Id.* at § 17529.5(b)(3)(C).

13. A prevailing spam recipient, but not a prevailing defendant, may recover reasonable attorneys' fees and costs. *Id.* at § 17529.5(b)(1)(C).

## II. INTRODUCTION AND SUMMARY OF THE COMPLAINT

14. JGW knowingly and deliberately targets and floods California with advertising across multiple channels, including television (the ubiquitous "877-CASH-NOW" commercials), and – the basis of this Action – spam emails.

15. Plaintiffs FRED APPLEWHITE *et al* bring this Action on behalf of a Class against professional "spamvertiser" JGW because the **10** named Plaintiffs collectively received at least **118 unlawful unsolicited commercial emails ("spams")** promoting JGW (the advertiser); its websites (including jgwentworth.com) and its debt reduction services. Putative Class members received at least **228** additional similar spams advertising JGW, its websites, and its services, for a total count of at least **346** spams at issue.

16. Plaintiffs also sue JGW's marketing partners/agents: the **actual senders** (aka publishers or spammers) who aided and abetted JGW's unlawful spamvertising, and others, such as the **spam networks**, who conspired with the spammers to send the spams and to aid and abet JGW's unlawful spamvertising. The actual senders took active steps to conceal their identities when they registered the domain names used to send the spams at issue such that Plaintiffs cannot identify them from the sending domain names. Nor do the bodies of the spams identify the actual senders.

17. The JGW spams at issue all materially violated at least one provision of Section 17529.5(a).

18. **Exhibits A-D**, incorporated herein by reference, are representative samples of the spams at issue.

19. Plaintiffs never gave "direct consent" to receive commercial email advertisements from, or had a "preexisting or current business relationship" with, JGW – the advertiser. Specifically, no Plaintiff ever requested information at a JGW website.

20. JGW violated Plaintiffs' statutory right to be free from receiving unlawful spams. Plaintiffs also suffered actual damages from the receipt of the JGW spams at issue, but only seek to recover statutory damages.

21. JGW is strictly liable under Section 17529.5 for *advertising in* the criminally unlawful spams at issue, even though for *most* (but not all) of the spams, it engaged or otherwise associated with someone(s) else – most likely the spam networks – to send the spams or to contract with the spammers to actually send the spams. To be clear, Plaintiffs allege that JGW itself sent only a small number of the spams at issue.

22. By promoting JGW, its websites, and its services, the spammers aided and abetted JGW's criminally unlawful spamming, and other entities, such as the spam networks, conspired with the spammers to do so.

23. This Court should award statutory liquidated damages of $1,000 per email as provided by Section 17529.5(b)(1)(B)(ii), and not consider any reduction in damages, because JGW and its spam networks and spammers failed to implement reasonably effective systems to prevent advertising in, aiding and abetting JGW advertising in, or conspiring to aid and abet JGW advertising in, the criminally unlawful spams. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

24. This court should award Plaintiffs their costs and attorneys' fees, pursuant to Section 17529.5(b)(1)(C).

## III. PARTIES

### A. Plaintiffs

25. Plaintiff **FRED APPLEWHITE ("APPLEWHITE")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at APPLEWHITE's email address(es) that he ordinarily accesses from California.

26. Plaintiff **RHONDA BRICE-HARRIS ("BRICE-HARRIS")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at BRICE-HARRIS's email address(es) that she ordinarily accesses from California.

27. Plaintiff **KEVIN DICERBO ("DICERBO")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at DICERBO's email address(es) that he ordinarily accesses from California.

28. Plaintiff **LISHA HENDERSON ("HENDERSON")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at HENDERSON's email address(es) that she ordinarily accesses from California.

29. Plaintiff **FANTASIA HILLIARD ("HILLIARD")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at HILLIARD's email address(es) that she ordinarily accesses from California.

30. Plaintiff **ANTHONY JONES ("JONES")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at JONES's email address(es) that he ordinarily accesses from California.

31. Plaintiff **LUTISHA ROSE MCGREGOR ("MCGREGOR")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of

the spams at issue were sent to and received at MCGREGOR's email address(es) that she ordinarily accesses from California.

32. Plaintiff **SYBIL NIXON ("NIXON")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at NIXON's email address(es) that she ordinarily accesses from California.

33. Plaintiff **GIANNA VENEGAS ("VENEGAS")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at VENEGAS's email address(es) that she ordinarily accesses from California.

34. Plaintiff **CHRYSTAL WILLIAMS ("WILLIAMS")** is now, and was at all relevant times, more than 18 years of age, and domiciled in and a citizen of California. Some of the spams at issue were sent to and received at WILLIAMS's email address(es) that she ordinarily accesses from California.

35. Plaintiffs' joinder in this Action is proper because Plaintiffs seek relief based on the same series of transactions or occurrences: all received similar spams advertising JGW, its websites, and its services, and all of those spams were sent by JGW, or with the assistance of, JGW's spam networks and spammers. The same questions of law (e.g., violations of Section 17529.5, strict liability) and fact (e.g., direct consent, practices and procedures to prevent advertising in unlawful spams) will arise in this Action.

**B. <u>Advertiser Defendants</u>**

36. Defendant **JGW DEBT SETTLEMENT LLC** is now and was at all relevant times a Nevada limited liability company with a principal place of business in Chesterbrook, Pennsylvania.

37. Defendant **THE J.G. WENTWORTH COMPANY** is now and was at all relevant times a Delaware corporation with a principal place of business in Chesterbrook, Pennsylvania.

38. Defendant **JG WENTWORTH COMPANY LLC** is now and was at all relevant times a business entity of unknown organization with a principal place of business in Chesterbrook, Pennsylvania. No such entity is registered with the Pennsylvania, Nevada, or Delaware

Secretaries of State, but some of the spams (*see* **Exhibit B**, incorporated herein by reference) refer to this purported entity.

39. At this time, Plaintiffs do not know all of the connections between JGW DEBT SETTLEMENT LLC, THE J.G. WENTWORTH COMPANY, and JG WENTWORTH COMPANY LLC. But they are related. Some of the spams refer to one or more than one of these entities. The spams for which Plaintiffs were able to capture the clickthrough and redirect links point to the jgwentworth.com website, which states that THE J.G. WENTWORTH COMPANY holds the copyright. Plaintiffs also allege that the entities share physical and intangible assets (brand name, email lists, affiliate marketing program), financial assets, office space, and personnel. For these reasons, Plaintiffs hereafter refer to JGW DEBT SETTLEMENT LLC, THE J.G. WENTWORTH COMPANY, and JG WENTWORTH COMPANY LLC collectively as **"JGW."**


JG Wentworth does not pay or assume any debts or provide legal, financial, tax advice, or credit repair services. You should consult with independent professionals for such advice or services. Please consult with a bankruptcy attorney for information on bankruptcy.
List of Licenses can be accessed here: Licenses - JG Wentworth
This is a solicitation
JGW Debt Settlement, LLC
1200 Morris Drive
Chesterbrook, PA 19087

Unsubscribe
© JGW 2026

You are receiving this message because you opted-in to receive emails from a third-party publisher.
This email was delivered by a third-party, on behalf of The JG Wentworth Company.

40. Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as **DOES 1-100** and therefore sue said Defendants under the fictitious name of "DOE." DOES 1-100 are directors, owners, officers, employees, or independent contractors of JGW, or predecessors, successors, parents, subsidiaries, or sister companies of JGW, and not of any of the spam networks or spammers, who were personally involved with JGW's unlawful spamming. Plaintiffs are informed and believe and thereon allege that each of these Defendants is legally responsible in some manner for the matters alleged in this Complaint, and is legally responsible in some manner for violating Plaintiffs' statutory rights. Plaintiffs are informed and believe and

thereon allege that each of the Defendants designated herein as DOES 1-100 was, at all times relevant to the matters alleged within this complaint, acting in conjunction with JGW to advertise JGW, its websites, and its services in the spams at issue. When the identities of DOE Defendants 1-100 are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege each such DOE Defendant's identity and involvement in more detail.

## C. Marketing Partners/Agents Defendants, and How the "Spamvertising" Scheme Works

41. The homepage of the jgwentworth.com website includes a link labeled "Affiliate Program" which, if clicked, redirects to JGW's "Affiliate Partner" webpage, where JGW knowingly and deliberately solicits third parties to drive "leads" to JGW.




*(cont. on next page)*




*(cont. from previous page)*

42. JGW contracted with Defendant spam networks to send spams for it, and the spam networks in turn contracted with the spammers (the actual senders). Thus, the spammers aided and abetted JGW's unlawful spamvertising, and the spam networks conspired with the spammers to do so. On information and belief, the spam networks and the spammers agreed to share the benefits and the risks of the spamming. The spam networks and the spammers formed these conspiracies by virtue of entering agreements together.

43. The spam networks effectuated the conspiracies by serving as a middleman between the spammers and JGW by, for instance: a) Contracting with the spammers to send spams promoting JGW; b) Transferring advertising content (e.g. From Names, Subject Lines, graphics) and tracking codes from JGW to spammers whom the networks knew would be sending spams to recipients whom the spammers had no reason to believe ever gave direct consent to JGW to receive their emails or had preexisting or current business relationships with JGW; c) Knowingly and deliberately directing clicks on the links in the spams to JGW in Pennsylvania; and d) Transferring affiliate commissions generated by the spamming from JGW back to the spammers. The spam networks knew that the spammers were going to aid and abet JGW with respect to advertising in unlawful spams, and permitted and ratified such conduct. But for the spam

networks' conspiracies with the spammers to aid and abet JGW's unlawful spamming, the unlawful spams would not have been sent and Plaintiffs' statutory rights would not have been violated.

***1. Spammer Defendants***

44. **DOES 101-700** are the spammers – JGW's marketing partners and/or agents – who actually sent the unlawful spams at issue, and thereby aided and abetted JGW's advertising in the unlawful spams.

45. Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as DOES 101-700 and therefore sue said Defendants under the fictitious name of "DOE." These Defendants operate various domain names associated with sending the spams at issue. Plaintiffs are informed and believe and thereon allege that each of these Defendants is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for violating Plaintiffs' statutory rights. Plaintiffs are informed and believe and thereon allege that each of these Defendants was, at all times relevant to the matters alleged within this complaint, aiding and abetting JGW's advertising in the unlawful spams at issue. When the identities of these Defendants are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege each such DOE Defendant's identity and involvement in more detail.

***2. Spam Network Defendants***

46. Defendants named in this subsection and DOES 701-900 are the spam networks – JGW's marketing partners and/or agents – who conspired with the actual senders to aid and abet JGW's advertising in the unlawful spams.

47. Defendant **ATWAVE LLC ("ATWAVE")** is now and was at all relevant times a New York limited liability company with a principal place of business in Miami Beach, Florida. ATWAVE conspired with one or more spammers to aid and abet JGW's unlawful advertising in at least **six** of the spams at issue sent to Plaintiffs and putative Class members (within the statute of limitations). ATWAVE knowingly and deliberately, pursuant to contract and with a profit

motive, directed Internet traffic (i.e. clicks on links in JGW spams sent by its spammers) to JGW in Pennsylvania.

48. Defendant **DARBIAN MEDIA LLC ("DARBIAN")** is now and was at all relevant times a Delaware limited liability company with a principal place of business in Bellmore, New York. DARBIAN conspired with one or more spammers to aid and abet JGW's unlawful advertising in at least **two** of the spams at issue sent to Plaintiffs and putative Class members (within the statute of limitations). DARBIAN knowingly and deliberately, pursuant to contract and with a profit motive, directed Internet traffic (i.e. clicks on links in JGW spams sent by its spammers) to JGW in Pennsylvania.

49. Defendant **DIRECT AGENTS LLC ("DIRECT AGENTS")** is now and was at all relevant times a Delaware limited liability company with a principal place of business in New York, New York. DIRECT AGENTS conspired with one or more spammers to aid and abet JGW's unlawful advertising in at least **one** of the spams at issue sent to Plaintiffs and putative Class members (within the statute of limitations). DIRECT AGENTS knowingly and deliberately, pursuant to contract and with a profit motive, directed Internet traffic (i.e. clicks on links in JGW spams sent by its spammers) to JGW in Pennsylvania.

50. Defendant **DM ("DM")** is now and was at all relevant times a business entity of unknown organization with an unknown principal place of business. JGW itself refers to this spam network as "DM" in its tracking links. DM conspired with one or more spammers to aid and abet JGW's unlawful advertising in at least **two** of the spams at issue sent to Plaintiffs and putative Class members (within the statute of limitations). DM knowingly and deliberately, pursuant to contract and with a profit motive, directed Internet traffic (i.e. clicks on links in JGW spams sent by its spammers) to JGW in Pennsylvania.

51. **DOES 701-900** are other spam networks who conspired with the spammers to aid and abet JGW's advertising in the unlawful spams.

52. Plaintiffs do not know the true names or legal capacities of the Defendants designated herein as DOES 701-900 and therefore sue said Defendants under the fictitious name of "DOE." These Defendants operate various domain names that are supposed to redirect recipients who

click the links in the spams to one of JGW's websites. Plaintiffs are informed and believe and thereon allege that each of these Defendants is legally responsible in some manner for the matters alleged in this complaint, and is legally responsible in some manner for violating Plaintiffs' statutory rights. Plaintiffs are informed and believe and thereon allege that each of these Defendants was, at all times relevant to the matters alleged within this Complaint, conspiring with the spammer defendants to aid and abet JGW's advertising in the unlawful spams at issue. When the identities of these Defendants are discovered, or otherwise made available, Plaintiffs will seek to amend this Complaint to allege each such DOE Defendant's identity and involvement in more detail.

***3. Other Defendants***

53. DOES 901-1,000 are other entities or persons who otherwise aided and abetted, conspired, or assisted with JGW's unlawful spamming alleged herein.

---

54. Defendants' joinder in this Action is proper because Plaintiffs seek relief jointly and severally from Defendants arising from the same series of transactions and occurrences, and because common questions of law and fact as to Defendants will arise in the Action. The fact that all Defendants may not be implicated in all spams does not bar joinder.

## IV. JURISDICTION AND VENUE

55. Jurisdiction is proper in the U.S. District Court for the Eastern District of Pennsylvania because: a) Lead Defendants JGW DEBT SETTLEMENT LLC and THE J.G. WENTWORTH COMPANY both have principal places of business in Chesterbrook, Pennsylvania; b) At least one member of JGW DEBT SETTLEMENT LLC is a citizen of Pennsylvania; c) Plaintiff JONES seeks $43,000 in statutory damages (but no actual damages) and his pro rata share of Plaintiffs' attorneys' fees, estimated through the end of litigation, exceeds $32,000; d) Plaintiffs and putative Class members are all citizens of California and no Defendant is a citizen of California; and e) Plaintiffs and putative Class members have Article III standing because each of them received unsolicited spams at issue in their own email inboxes, which invaded their

privacy and is a concrete injury fairly traceable to each Defendant. *Susinno v. Work Out World Inc.,* 862 F.3d 346, 350-52 (3rd Circ. 2017); *Hall v. Smosh Dot Com Inc.*, 72 F.4th 983, 986-90 (9th Cir. 2023).

56. Venue is proper in the U.S. District Court for the Eastern District of Pennsylvania because JGW DEBT SETTLEMENT LLC and THE J.G. WENTWORTH COMPANY both have principal places of business in Chesterbrook, Pennsylvania.

## V. NAMED PLAINTIFFS RECEIVED AT LEAST 118 UNLAWFUL SPAMS; PUTATIVE CLASS MEMBERS RECEIVED AT LEAST 228 MORE

57. Plaintiffs allege that Defendants engaged in tortious conduct: "wrongful act[s] other than a breach of contract for which relief may be obtained in the form of damages or an injunction." *See* Merriam-Webster, www.merriam-webster.com/dictionary/tort (last viewed Nov. 17, 2026).

58. California's False Advertising Law, Cal. Business & Professions Code § 17500

> prohibits "not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has a capacity, likelihood or tendency to deceive or confuse the public." . . . . [T]he UCL and the false advertising law prohibit deceptive advertising even if it is not actually false.

*Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226-27 (2d Dist. 2013) (citation omitted). "Fraud" in the context of a Cal. Business & Professions Code § 17500 False Advertising action does not mean the common-law tort. *Id.* Claims for violations of Section 17529.5 are not claims for common-law fraud. *Hypertouch,* 192 Cal. App. 4th at 820. Plaintiffs are not bringing claims for fraud and are not required to plead with particularity.

### A. The Emails at Issue are "Spams"; Counts

59. JGW advertised in at least **118** emails that Plaintiffs received within the one-year statute of limitations[1] (as extended pursuant to written agreement between JGW and Plaintiffs), and putative Class members received at least **228** more emails within the agreed-to extended statute of limitations, for a total of at least **346** emails, as follows:

[1] Cal. Code Civ. Proc. § 340(a); *Hypertouch*, 192 Cal. App. 4th at 840-45.

| PLAINTIFF | COUNT | PLAINTIFF | COUNT | PLAINTIFF | COUNT |
|---|---|---|---|---|---|
| Applewhite | 15 | Hilliard | 7 | Venegas | 3 |
| Brice-Harris | 29 | Jones | 43 | Williams | 3 |
| DiCerbo | 8 | McGregor | 1 | **CLASS REPS** | **118** |
| Henderson | 8 | Nixon | 1 | Class Members | 228 |
| | | | | **TOTAL** | **346** |

60. Plaintiffs received all of the JGW emails at issue at their "California email addresses."[2]

61. The emails at issue are "commercial email advertisements"[3] because they were initiated for the purpose of advertising and promoting JGW, its websites, and its services.

62. The emails at issue are "unsolicited commercial email advertisements"[4] aka "spams" because Plaintiffs never gave "direct consent"[5] to JGW (the advertiser) to send them emails, and never had a "preexisting or current business relationship"[6] with JGW.

---

[2] "'California e-mail address' means 1) An e-mail address furnished by an electronic mail service provider that sends bills for furnishing and maintaining that e-mail address to a mailing address in this state; 2) An e-mail address ordinarily accessed from a computer located in this state; 3) An e-mail address furnished to a resident of this state." Cal. Bus. & Prof. Code § 17529.1(b).

[3] "'Commercial e-mail advertisement' means any electronic mail message initiated for the purpose of advertising or promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(c).

[4] "'Unsolicited commercial e-mail advertisement' means a commercial e-mail advertisement sent to a recipient who meets both of the following criteria: (1) The recipient has not provided direct consent to receive advertisements from the advertiser. (2) The recipient does not have a preexisting or current business relationship, as defined in subdivision (*l*), with the advertiser promoting the lease, sale, rental, gift offer, or other disposition of any property, goods, services, or extension of credit." Cal. Bus. & Prof. Code § 17529.1(o).

[5] "'Direct consent' means that the recipient has expressly consented to receive e-mail advertisements *from the advertiser*, either in response to a clear and conspicuous request for the consent or at the recipient's own initiative." Cal. Bus. & Prof. Code § 17529.1(d) (emphasis added).

[6] "'Preexisting or current business relationship,' as used in connection with the sending of a commercial e-mail advertisement, means that the recipient has made an inquiry and has provided his or her e-mail address, or has made an application, purchase, or transaction, with or without consideration, regarding products or services offered by the advertiser. []" Cal. Bus. & Prof. Code § 17529.1(*l*).

63. Indeed, many of the spams (the spams *not* sent by JGW itself) expressly admit that there is no direct consent because Plaintiffs purportedly opted in to third-party publishers, who sent the spams:

> JG Wentworth does not pay or assume any debts or provide legal, financial, tax advice, or credit repair services. You should consult with independent professionals for such advice or services. Please consult with a bankruptcy attorney for information on bankruptcy.
> List of Licenses can be accessed here: Licenses - JG Wentworth
> This is a solicitation
> JGW Debt Settlement, LLC
> 1200 Morris Drive
> Chesterbrook, PA 19087
>
> Unsubscribe
> © JGW 2026
>
> You are receiving this message because you opted-in to receive emails from a third-party publisher.
> This email was delivered by a third-party, on behalf of The JG Wentworth Company.

64. Plaintiffs did not consent or acquiesce to receive the spams at issue. Plaintiffs did not do anything to deliberately receive the spams at issue, including but not limited to requesting information on JGW's websites. Plaintiffs did not waive any claims related to the spams at issue. Plaintiffs did not direct or ratify the conduct of JGW or any other Defendant. Plaintiffs did not consent to JGW's or any other Defendant's Terms & Conditions or Privacy Policy, if any such documents exist. Plaintiffs do not bring any claims related to third-party postings on JGW's or anyone else's websites.

65. The spams are all unlawful and violate Section 17529.5 because they include:

- Materially false, misrepresented, and/or forged information contained in or accompanying the email headers[7] (*see* **Sections B-C**, below).

---

[7] The terms "email header," "header," "headers," and "header information" are all synonymous and used interchangeably throughout this pleading, and carry the commonly understood meaning of those terms (i.e. including From, To, CC, Subject, and Date fields). *See* Internet Engineering Task Force, RFC 5322 – INTERNET MESSAGE FORMAT at § 3.6 (*19) (October 2008), *available at* https://tools.ietf.org/html/rfc5322. In a nutshell, RFC 5322 sets forth the technical protocols that enable email to work.

- Subject Lines likely to mislead a recipient as to the true subject matter of the spams (*see* **Section D**, below).

**B. <u>Spams Sent Using Domain Names That are Not Readily Traceable to the Actual Senders Materially Violate Section 17529.5(a)(2)</u>**

66. Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

67. Registration information for the domain names used to send spams is information contained in or accompanying email headers.

68. Email headers include the sending email address field, which is comprised of a *username* (the part before the @ sign) and the *domain name* (the part after the @ sign, ending with .com, .net, .us, .gov, .edu, etc.), e.g., **ingcrossrefence.info** in the exemplar spam shown in **Exhibit A**. *See* RFC 5322, *supra* at n.7.

69. As a matter of substantive and controlling California law, a commercial emailer's use of not-readily-traceable[8] domain names to conceal its identity constitutes a material misrepresentation and violates Section 17529.5(a)(2), and so such claims are not preempted by the federal CAN-SPAM Act. *Balsam*, 203 Cal. App. 4th at 1098-1101; *Greenberg*, 65 Cal. App. 5th at 919-920.

70. Almost all of the sending domain names materially violate Section 17529.5(a)(2) and are at issue in this Action. The few spams sent from readily-traceable domain names are actionable because the Subject Lines are unlawful, *infra*.

71. The *Balsam* court went into great detail about the importance of being able to identify a spam's *sender*, mainly because the spammers – i.e., the actual senders – and not the advertisers control the lists of email addresses to which the spams are sent. 203 Cal. App. 4th at 1098-99.

72. Indeed, the *Balsam* appellate court affirmed the trial court's judgment in plaintiff's favor due to untraceable sending domain names, even where the spams clearly identified the advertiser

---

[8] A "traceable" domain name means that an ordinary recipient could identify the sender by querying a publicly accessible database such as Whois. "Traceable" does *not* mean that only a trained investigator or a determined litigant armed with discovery and subpoena rights could identify the sender. *Balsam*, 203 Cal. App. 4th at 1098.

in the bodies. *Id.* at 1090-91 and 1101 n.16 ("Trancos also points out each e-mail included the advertiser's physical address. However, when the sender and advertiser are unrelated entities, including the advertiser's purported address does not affect whether the sender's identity is falsified or misrepresented"). *See also Greenberg,* 65 Cal. App. 5th at 920 ("We have already rejected [the Advertiser's] claim that it is immune from liability based on the emails' [sending] domain names so long as *it* is identified in the body of an email, and we perceive no other reason it should not be responsible for its marketing partners' misrepresentation of their own identities").

73. Accordingly, even though most (but not all) of the bodies of the spams at issue identify the *advertiser* JGW, that does not "cure" the undisputable fact that the sending domain names are not traceable to the *actual senders*. Furthermore, even if the body of a spam states a spammer's true address but not its name, as a matter of substantive and controlling California law, the ability to *contact* a spammer is not the same thing as *identifying* the spammer. *Balsam*, 203 Cal. App. 4th at 1090 n.7, 1100-01.

74. Although Plaintiffs do not bring claims under the federal CAN-SPAM Act, Plaintiffs point out that that the first item in the FTC's CAN-SPAM Act compliance guidelines states:

> **1. Don't use false or misleading header information.** Your "From," "To," "Reply-To," and routing information – *including the originating domain name and email address* – must be accurate and identify the person or business who initiated the message.

*See* Federal Trade Commission, CAN-SPAM ACT: A COMPLIANCE GUIDE FOR BUSINESS, *available at* https://www.ftc.gov/business-guidance/resources/can-spam-act-compliance-guide-business (last visited Nov. 14, 2026) (emphasis added).

75. Besides those FTC guidelines, the CAN-SPAM Act makes much of the conduct alleged in this Complaint a felony.[9] While Plaintiffs cannot and do not bring claims under the federal

[9] The criminal portion of the CAN-SPAM Act, 18 U.S.C. § 1037(a)(4), prohibits knowingly "register[ing], using information that materially falsifies the identity of the actual registrant, for [ ] two or more domain names, and intentionally initiat[ing] the transmission of multiple commercial electronic mail messages from any combination of such accounts or domain names," or conspiring to do so. Under subsection (b), penalties include fines, imprisonment, or both.

CAN-SPAM Act, if JGW's spammers' actions constitute felony fraud under federal law, such actions surely constitute material falsity and deception and violate Section 17529.5.

76. Plaintiffs do not argue that the sending domain names must explicitly state the legal name of the senders. Rather, Plaintiffs simply argue that whatever a domain name is or however it is registered, it cannot be false or misleading. *Truth* is not a "label" or a "labeling requirement."

77. The domain names that JGW's spammers used to send the spams at issue identify the spammers on their faces. Nor are the sending domain names readily traceable to the actual sender by querying a publicly available database such as Whois. More specifically:

***1. Proxy-Registered Domain Names***

78. JGW's spammers sent **52** of the spams at issue to Plaintiffs/Class Representatives from **12** domain names (*see* **Exhibit E**, incorporated herein by reference) that were proxy-registered.[10] For example: a Whois query for the sending domain name **ingcrossrefence.info** (used to send the spam shown in **Exhibit A**, incorporated herein by reference) shows that the domain name was registered to "Withheld for Privacy ehf" when the spam was sent. Accordingly, a person querying the Whois database for these domain names would not be able to identify the entities or persons who actually controlled these domain names and sent these spams.

***2. Redacted-for-Privacy Domain Names***

79. JGW's spammers sent **three** of the spams at issue to Plaintiffs/Class Representatives from **three** domain names (*see* **Exhibit E**, incorporated herein by reference) from which the spammers' identifying information was redacted for privacy. For example: a Whois query for the domain name **mcderardparisfr.com** shows that the owner's information was "Redacted for Privacy" when the spam was sent. Accordingly, a person querying the Whois database for these domain names would not be able to identify the entities or persons who actually controlled these domain names and sent these spams.

[10] Proxy registration means that the spammers transferred legal title to the domain names to third party registration service such as Withheld for Privacy ehf or Domains by Proxy Inc., while still maintaining full operational control of the domain names.

### *3. Falsely-Registered Domain Names*

80. JGW's spammers sent **33** of the spams at issue to Plaintiffs/Class Representatives from **16** domain names (*see* **Exhibit E**, incorporated herein by reference) that are registered to fake names/entities, claiming fake addresses or addresses at commercial mail receiving agencies ("CMRAs") – sometimes without box numbers. For example:

- A Whois query for the sending domain **autoinsuranceroyalty.com** shows that it was registered to "Brighton Digital Logistics, 1001 S Main Street Ste 4222, Kalispell, MT 59901" when the spam was sent. But according to the Montana Secretary of State, there was no such registered entity or assumed business entity when the spam was sent.

- A Whois query for the domain name **consumingway.com** shows that it was registered "Marisol Bolton, 82 W. Pacific, ND, ND 58078" when the spam was sent. But according to the United States Postal Service's website, the ZIP Code 58078 is in West Fargo, North Dakota, and there is no "82 W. Pacific" Street, Road, Avenue, etc. in West Fargo, North Dakota.

Accordingly, a person querying the Whois database for these domain names would not be able to identify the entities or persons who actually controlled these domain names and sent these spams.

### *4. Forged Headers Showing Domain Names Registered to Third Parties*

81. JGW's spammers sent **one** of the spams at issue to Plaintiffs/Class Representatives with headers forged to make it *appear* that that the spam was sent from a certain domain name – **oberwaid.ch** – even though the spam was *not* sent from that domain name. Oberwaid, the owner of the domain name, is a Swiss hotel that also provides medical and wellness services. Accordingly, a person querying the Whois database for this domain name would not be able to identify the entity or person who forged the email headers and sent this spam.

### *5. Forged Headers Showing Nonexistent Domain Names*

82. JGW's spammers sent **eight** of the spams at issue to Plaintiffs/Class Representatives with headers forged to make it *appear* that the spams were sent from **eight** mostly garbled and nonsensical domain names (*see* **Exhibit E**, incorporated herein by reference), when in fact these (purported) domain names were *never* registered, or at a minimum, were not registered when the spams at issue were sent. For example: a Whois query for the domain name **7cgmrn.us** (used to

send the spam shown in **Exhibit B**, incorporated herein by reference) shows no match at all. Accordingly, a person querying the Whois database for these domain names would not be able to identify the entities or persons who actually forged the email headers and sent these spams.

***6. Registered Domain Names But With No Information Identifying the Registrant***

83. JGW's spammers sent **three** of the spams at issue to Plaintiffs/Class Representatives from **three** domain names (*see* **Exhibit E**, incorporated herein by reference) that appear to be registered, but a Whois query for e.g. the domain name **castinctions.com.de** (used to send the spam shown in **Exhibit C**, incorporated herein by reference) shows that the domain name exists, but there is simply no data for the registrant. Accordingly, a person querying the Whois database for these domain names would not be able to identify the entities or persons who actually controlled these domain names and sent these spams.

***7. Domain Names Belonging to Other Companies***

84. JGW's spammers sent **three** of the spams at issue to Plaintiffs/Class Representatives from **one** domain name – **xmr3.com** – that belongs to another company: OpenText Corporation of Waterloo, Ontario, Canada (*see* **Exhibit D**, incorporated herein by reference). Plaintiffs do not allege that the headers are forged, and Plaintiffs believe that the spams did in fact come from OpenText's servers. But, because the actual spammer chose to send the spam via xmr3.com instead of from one of its own domain names, a person querying the Whois database for the sending domain name would only be able to identify OpenText Corporation, and would not be able to identify the entity or person who actually sent these spams.

**C. <u>Spams Sent Using From Names with False/Misrepresented Information Materially Violate Section 17529.5(a)(2)</u>**

85. Section 17529.5(a)(2) prohibits falsified or misrepresented information contained in or accompanying email headers.

86. The From Name field is part of email headers. *See* RFC 5322, *supra* at n.7.

87. JGW's spammers sent **one** of the spams at issue to Plaintiff WILLIAMS with the From Name **"TikTok♦."** This From Name is objectively false and misrepresented because the spam at issue is *not* from TikTok; it is from a JGW spammer. The falsity and misrepresentation is material because a recipient, receiving an email with a third-party's name in the From Name (e.g.

TikTok), could reasonably believe that the email was in fact from that third party, when in fact it is just a run-of-the-mill spam advertising JGW.

88. JGW's spammers sent **five** of the spams at issue to Plaintiff DICERBO with the From Name **"kevindicerbo"** (*see* **Exhibit A**, incorporated herein by reference.) This From Name is objectively false and misrepresented because the spams are *not from* DICERBO; they are from a JGW spammer(s) and the spams were sent *to* DICERBO. Indeed, the spammer is falsely accusing *DICERBO* of being a spammer! The falsity and misrepresentation in these From Names is material because a recipient, receiving an email with their own (user)name in the From Name field might believe that they sent the email to *themselves* as a reminder for something, when in fact the email is just a run-of-the-mill spam advertising JGW.

**D. Spams With Subject Lines Likely to Mislead a Recipient as to the Contents or Subject Matter of the Spams Materially Violate Section 17529.5(a)(3)**

89. Section 17529.5(a)(3) prohibits Subject Lines that a person knows are likely to mislead a reasonable recipient about a material fact regarding the contents or subject matter of the emails.

90. Plaintiffs received **26** of the spams at issue, sent by JGW's third-party marketing partners/agents, with Subject Lines that assert past dealings and prior relationships between Plaintiffs and JGW, or claiming information (e.g. knowledge that the recipient has debt) that JGW could only have if there were past dealings and prior relationships, or purporting to reply to communications from Plaintiffs. JGW knows (or has constructive knowledge) that these Subject Lines are likely to mislead a reasonable recipient by asserting *past dealings and prior relationships*, when in fact the true subject matter of the spams is *new customer acquisition*, precisely *because* JGW used third parties to send these spams. (Indeed, if JGW wanted to communicate with its customers, it could easily do so on its own. But JGW hires third-party spam networks and spammers to hawk its websites and services to acquire new customers because those third parties have email addresses that JGW does not have.)

91. The Subject Lines asserting past dealings and prior relationships, as shown by purported actual knowledge of the recipients' finances, in spams sent by third parties include:

- **"[Name], Resolve Your $15,000 Debt for Less Than You Owe!"**
- **"Call for your $24,000 debt relief consultation [Name]"**

- **“Dear [NAME] - Regarding Your Current Debt - New Options Are Available”**
- **“Give yourself the gift of resolving your credit card debt”**
- **“lisha1st Lower Your Debt Payments See If Youre Eligible”** (*See* **Exhibit B**, incorporated herein by reference)
- **“Take Control of Your Debt - We're Here to Help!”**

The exemplar Subject Lines immediately above – and others that are essentially identical – do not discuss debt *in general*; e.g. “A debt-free life is possible with JG Wentworth.” Rather, these Subject Lines expressly and specifically use the word “Your” to refer to the *recipients’* debt (spams are a form of direct marketing, not mass-media TV commercials). JGW’s assertion that *these Plaintiffs* have debt (whether that assertion is in fact true or false) is an assertion that JGW has knowledge of Plaintiffs’ finances, which is an assertion of past dealings – How else would JGW know about their debt? – when that is not the case.

- **“re: your credit card bill”** (*See* **Exhibit A**, incorporated herein by reference)

Subject Lines beginning with “re:” are assertions that JGW is replying to a communication from Plaintiffs, even though Plaintiffs never communicated with JGW.

- **“Welcome to JGWentworth”** (*See* **Exhibit D**, incorporated herein by reference)
- **“Verification qcnk”**

The exemplar Subject Lines immediately above expressly assert that Plaintiffs are new JGW clients or about to be new JGW clients, and that Plaintiffs have past dealings with JGW, when that is not the case. Put another way, because Plaintiffs are *not* JGW customers or about to be JGW customers, there is literally nothing for JGW to welcome them to and nothing for JGW to verify.

92. These Subject Lines – and others that are essentially identical – materially violate Section 17529.5(a)(3) because they are likely to mislead a reasonable recipient into believing that there are past dealings, relationships, and communications – and therefore tricking the recipient into opening the email – when the true subject matter of the spams is new customer acquisition. Even if Plaintiffs had debt, or had communicated with JGW, or had signed up to be a JGW client, the marketing partner/agent who sent these spams would not have known it.

93. Plaintiffs received **seven** of the spams at issue, sent by JGW itself and not by third-party marketing partners/agents, with Subject Lines that also falsely assert past dealings and prior relationships between Plaintiffs and JGW, or falsely claiming information (e.g. knowledge that the recipient has debt) that JGW could only have if there were past dealings and prior relationships, or purporting to reply to communications from Plaintiffs. JGW knows (or has constructive knowledge) that these Subject Lines are likely to mislead a reasonable recipient by asserting *past dealings and prior relationships*, when in fact these recipients never requested information from JGW in the first place. The Subject Lines asserting past dealings and prior relationships in spams sent by JGW itself include:

- **"JGW Inquiry Confirmation for Jordy Stark"**
- **"Reaching out about your debt resolution options"**
- **"Say "hello" to JG and "goodbye" to debt"**
- **"JGW Inquiry Confirmation for [Name that is not the Plaintiff's name]"**

94. The exemplar Subject Lines immediately above – and others that are essentially identical – materially violate Section 17529.5(a)(3) because they are likely to mislead a reasonable recipient into believing that there are past dealings, relationships, and communications, and therefore to trick a reasonable recipient into opening the email, when the true subject matter of the spams is new customer acquisition. Indeed, "Inquiry Confirmation" expressly, but falsely, asserts that Plaintiffs previously made inquiries to JGW and gave JGW direct consent to send them emails, hoping that Plaintiffs may not remember if they ever made such an inquiry.

95. In 2025, other plaintiffs sued JGW for its *own* unlawful spamming in which JGW similarly, but falsely, claimed that the recipients had requested information. *Jonathan Bradshaw et al v. JGW Debt Settlement LLC et al*, No. 25CV468263 (Super. Ct. Cal. Cty. of Santa Clara filed June 16, 2025). That case settled and was dismissed without any admission of liability, but Plaintiffs' point is that JGW had actual knowledge that *it* was spamming California residents who purportedly but did not in fact request information from JGW. And yet, JGW did nothing to fix its marketing practices and procedures (if it has any at all).

96. Plaintiffs received **three** of the spams at issue with Subject Lines that are otherwise likely to mislead a reasonable recipient as to the true subject matter of the spams. These otherwise misleading Subject Lines include:

- **"You have a new message on TikTok"**

In a spam sent by a third-party marketing partner/agent, the exemplar Subject Line immediately above – and other Subject lines referring to other companies that are *not* JGW – facially communicate to the recipient that the true subject matter of the spam is something *other* than an ad for JGW, and so these Subject Lines are likely to mislead a reasonable recipient as to the true subject matter of the spams, which is new customer acquisition for JGW.

- **"Christop, get your instant savings estimate"**
- **"Marty, get your instant savings estimate"**

In two spams sent by JGW itself to Plaintiff HILLIARD just two days apart, the exemplar Subject Lines immediately above – and others that are essentially identical – are so vague and ambiguous that they are likely to mislead a reasonable recipient as to the true subject matter of the spams, which is new customer acquisition for JGW. "Get your instant savings estimate" could just as easily apply to anything from Endurance vehicle service warranties to Renewal by Andersen windows to AARP memberships. Moreover, HILLIARD's first name is "Fantasia," not "Christop" or "Marty," and JGW's marketing practices and procedures (if any) failed to identify a possible problem with sending an email to "Marty" two days after sending an email to "Christop" at the same email address.

**E. <u>Subsequent Truth Does Not Cure Initial Falsity</u>**

97. Truthful information elsewhere in a spam does not cure false or misrepresented information in the headers. *Brady v. Bayer Corp.*, 26 Cal. App. 5th 1156 (4th Dist. 2018), citing with approval *Williams v. Gerber Products Company*, 552 F.3d. 934, 939-40 (9th Cir. 2008) (ruling based on California law). Furthermore, a reasonable consumer may still be deceived by

an impossible claim.[11] *Panelli v. Target Corp.* (9th Cir. 2026) 172 F.4th 1120, 1127-1128 (citing with approval *Chapman v. Skype Inc.* (2013) 220 Cal.App.4th 217, 226-27).

98. Importantly, the *Balsam* court ruled that the seven spams at issue on appeal violated Section 17529.5 due to the untraceable sending domain names, *even though the bodies of most of the spams identified the advertisers*. For example, the court affirmed the judgment in the plaintiff's favor as to Email No. 1, which did not identify the spammer/actual sender Trancos Inc., even though identified the advertiser "Strategic Financial Publishing Inc." in the body and provided its address in Indiana. 203 Cal. App. 4th at 1093, 1090-1091, 1101. *See also Greenberg,* 65 Cal. App. 5th at 920.

99. Although certain portions of the spams identify JGW as the advertiser, just as the sending domain names do not identify the actual senders, the bodies of the spams do not identify the actual senders either (except for the spams that JGW sent itself).

- Some of the spams' bodies contain no information about the actual sender at all (*see* **Exhibits A-B**, incorporated herein by reference).
- Some of the spams' bodies contain real physical or mailbox addresses (*see* **Exhibit D**, incorporated herein by reference), but no names. Even *if* these addresses really belong to the actual senders, the ability to contact a spammer is not the same as *identifying* the spammer. *Balsam*, 203 Cal. App. 4th at 1101.
- Some of the spams' bodies contain false, ridiculous, and impossible addresses, e.g. "Emiliano Yost, 89302 Roy Trafficway Suite 929, West Leonoramouth, WI 36273, MI, UT, 71984" (*see* **Exhibit C**, incorporated herein by reference), which clearly do not identify the actual sender.

These are just examples; this list does not purport to be exhaustive.

100. A spam recipient seeking statutory liquidated damages – as opposed to actual damages – is under no obligation to click a link in a spam to try to figure out who actually sent the spam, or for any other reason. *Phillips v. NetBlue Inc.*, No. C-05-4401 SC, 2006 U.S. Dist. LEXIS 92573,

---

[11] For example, the Subject Line in a JGW spam purporting to verify something is impossible if the recipient never applied to be a JGW customer in the first place. Nevertheless, a recipient could still be misled by such a Subject Line into believing that the email is from someone for which the recipient *did* register. The point of such Subject Lines referring to "verifying," "welcoming," etc. is to trick to recipients into opening the spams by asserting past dealings.

at *4 (N.D. Cal. Dec. 12, 2006) (order denying as "futile" defendants' motion for leave to amend answer). Indeed, the Federal Trade Commission, California Attorney General, and California state and federal courts expressly advise consumers to *not* click links in spams sent by unknown spammers.[12] Accordingly, Plaintiffs did not attempt to unsubscribe from the JGW spams by clicking links in the spams.

### F. **JGW is Strictly Liable for Advertising in Spams Sent By Its Spammers; the Spammers and Spam Networks are Liable Too**

101. There is no dispute that the spams at issue promote JGW, its websites, and its services. JGW benefits by brand awareness, website traffic, and customer acquisition when recipients see and act upon its spams.

102. JGW, as the advertiser, is strictly liable for advertising in the spams at issue, even though – for most of the spams at issue – it engaged spam networks who conspired with the spammers, and the spammers aided and abetted JGW's unlawful spamvertising by actually sending the spams. Cal. Bus. & Prof. Code § 17529(j), (k) and 17529.5(a). To be clear, Plaintiffs allege that JGW sent only a small number of the spams itself: **9** of 118 to Plaintiffs, and **46** of 228 to putative Class members, for a total of **55** of 346.

103. Moreover, California courts reject advertisers' claims that they are immune from liability based on an email's sending domain name simply because the advertiser is identified in the body

---

[12] "A Federal Trade Commission (FTC) study conducted before enactment of the CAN-SPAM Act found that most purported 'remove me' links and addresses in a sample of 200 unsolicited commercial e-mails were invalid or ineffective. *Balsam*, 203 Cal. App. 4th at 1099 n.13.

From at least March 29, 2007 through at least April 27, 2023, the California Attorney General has expressly advised consumers "Never respond to unsolicited email. Your response is likely to trigger more spam to your email address." At some point between April 28, 2023 and May 17, 2023, the language changed and now the Attorney General advised consumers "Do not click on links or open attachments contained in suspicious emails."

*See also Balsam*, 203 Cal. App. 4th at 1100 ("Attempting to unsubscribe is not a practical option when the unwilling recipient has no ability to determine the sender's identity or good faith"); *Ferguson v. FriendFinders Inc.*, 94 Cal. App. 4th 1255, 1268 (1st Dist. 2002) ("Deceptive [spam] can be difficult if not impossible to identify without opening the message itself. Having to take that extra step can be more than a waste of time and money. [Spam] has been successfully used to spread harmful computer viruses"); *Phillips v. NetBlue Inc.*, No. C-05-4401 SC, 2006 U.S. Dist. LEXIS 92573 (N.D. Cal. 2006) (denying defendant's motion for leave to amend answer as futile because spam recipients have no obligation to unsubscribe).

of an e-mail. *Balsam*, 203 Cal. App. 4th at 1090-91; *Greenberg*, 65 Cal. App. 5th at 921. Ultimately, California courts have consistently held that where an advertiser's spammers misrepresent their identities, the advertiser is responsible. *Greenberg*, 65 Cal. App. 5th at 920, citing *Hypertouch*, 192 Cal. App. 4th at 820-21. Of course, JGW's spammers are also liable for aiding and abetting JGW's unlawful spamvertising, and the spam networks are liable for conspiring with the spammers to do so.

104. No one forced JGW to outsource any of its advertising to third party spam networks and spammers, but JGW chose to (directly or indirectly) contract with and partner with the spam networks and the spammers – disreputable entities who actively took steps to conceal their identities by forging email headers, proxy-registering domain names or redacting their identities from the Whois database, registering domain names to fake names and addresses, and failing to identify themselves in the bodies of the spams – all to promote JGW, for a profit.

105. To the extent that JGW's spammers created certain false, misrepresented, and misleading information as they sent the instant spams promoting JGW, the spammers must be held liable for aiding and abetting JGW's violations of Section 17529.5 because these spammers are the entities who actually caused JGW to advertise in most of the unlawful spams. Although the spammers are not *strictly* liable *directly* under Section 17529.5, nothing in the statute prohibits imposing liability on the spammers for the actual acts that aided and abetted JGW advertising in unlawful spams.

106. For most of the spams at issue that JGW's spammers – as opposed to JGW itself – sent to Plaintiffs, JGW's spam networks conspired with the spammers to aid and abet JGW's violations of Section 17529.5. Although the spam networks are not *strictly* liable *directly* under Section 17529.5, nothing in the statute prohibits imposing liability on the spam networks for conspiring with the actual spammers who aided and abetted JGW advertising in unlawful spams.

### G. Plaintiffs Sue for Statutory Liquidated Damages; No Allegations or Proof of Reliance or Actual Damages is Necessary

107. The California Legislature defined liquidated damages to be $1,000 per spam. Bus. & Prof. Code § 17529.5(b)(1)(B)(ii). This figure is designed to be punitive, rather than compensatory for actual damages. *Hypertouch*, 192 Cal. App. 4th at 842-845. There is nothing

unfair or unconstitutional about $1,000 per unlawful spam; the *Balsam* appellate court affirmed the trial court's award of $1,000 per spam, for the seven spams actually at issue on appeal.

108. The $1,000 per spam figure is comparable with damages in other areas of consumer protection law, e.g., $500-$1,500 statutory damages for violations of the Telephone Consumer Protection Act, 47 U.S.C. § 227(b)(3), (c)(5).

109. Plaintiffs' rightful and lawful demand for statutory liquidated damages in the amount of $1,000 per email is necessary to further the California Legislature's objective of protecting California residents from unlawful spam and punishing offenders. In fact, California's spam law even has a criminal component at Section 17529.5(b)(3)(C) – it is a misdemeanor to advertise in spams that violate Section 17529.5.

110. Section 17529.5 does not require Plaintiffs to allege, suffer, or quantify any actual damages; allege or prove reliance on the advertisements contained in the spams; visit JGW's website; or purchase JGW's services. *Recipients* of unlawful spam have standing to sue and recover liquidated damages. Bus. & Prof. Code § 17529.5(b)(1)(A)(iii); *Hypertouch*, 192 Cal. App. 4th at 820, 822-23, 828. Here, Plaintiffs suffered actual damages from the receipt of the JGW spams at issue, but only seek to recover statutory damages. Cal. Bus. & Prof. Code § 17529.5(b)(1)(B).

### H. <u>Defendants' Actions (and Inactions) Were Willful and Preclude any Reduction in Statutory Damages</u>

111. Section 17529.5 authorizes a court to reduce the statutory liquidated damages to $100 per spam. Cal. Bus. & Prof. Code § 17529.5(b)(2). But, to secure the reduction, Defendants have the burden of proof to demonstrate not only that they *established* reasonable practices and procedures to prevent unlawful spamming, but also that they *implemented* those practices and procedures, and that the practices and procedures are *effective*.

112. Defendants have not established, with due care, practices and procedures reasonably designed to effectively prevent unsolicited commercial e-mail advertisements that are in violation of Section 17529.5.

113. Even if Defendants had established, with due care, any practices and procedures to prevent advertising in unlawful spams, such practices and procedures were not reasonably designed to be effective.

114. Even if Defendants had reasonably designed practices and procedures to prevent advertising in unlawful spams, such practices and procedures were not implemented to be effective.

115. Indeed, long after Plaintiffs' counsel provided Plaintiffs' and many of the putative Class members' email addresses to JGW, some of them *continued* to receive JGW spams.

116. JGW has been sued at least twice before for unlawful spamming in violation of Section 17529.5: *Jonathan Bradshaw et al v. JGW Debt Settlement LLC et al*, No. 25CV468263 (Super. Ct. Cal. Cty. of Santa Clara filed June 16, 2025), and *Debra Kottong et al v. The J.G. Wentworth Company et al*, No. CGC-17-556316 (Super. Ct. Cal. Cty. of San Francisco filed Jan. 9, 2017). Although neither case litigated to judgment, Plaintiffs' point is that JGW had actual knowledge of Section 17529.5 and the risks of engaging in unlawful spamvertising, and yet chose to continue doing so.

117. Moreover, **two** of the 10 named Plaintiffs, and **seven** of the 60 putative Class members, have prior settlement agreements with JGW arising from JGW's unlawful spamvertising, and yet JGW *still* could not stop its unlawful spamvertising to them.

118. To the extent that any of JGW's spam networks may have violated the terms of their marketing contracts with JGW, or any of the spammers violated the terms of their contracts with the spam networks, that demonstrates that the contracts – and any compliance requirements included therein – are ineffective.

119. Domain names do not register themselves. Email headers do not forge themselves. From Names and Subject Lines and email bodies do not write themselves. The multiple statutory violations in these spams are not "clerical errors." Defendants went to great lengths to create the false, deceptive, and misleading content described herein to deceive recipients as to who sent the spams.

120. Plaintiffs are informed and believe and thereon allege that Defendants intended to profit, actually profited, and continue to profit, and were unjustly enriched by, their wrongful conduct as described herein.

## VI. CLASS ACTION ALLEGATIONS

121. Plaintiffs bring this Class Action for liquidated damages on behalf of a [putative] Class, defined as: The individuals listed in **Exhibit F**:

- Who received at their "California email addresses" "commercial email advertisements" advertising JGW, its websites, and its services; and
- Who never provided "direct consent" to receive advertisements from JGW and who do not have a "preexisting or current business relationship" with JGW; and
- Who received the email advertisements within one year prior to filing this Action on November 23, 2026 (as extended pursuant to written agreement with JGW); and
- The emails were sent or purportedly sent from domain names for which a query of the publicly accessible WHOIS database:
    - Showed that the domain names were registered through a proxy- or privacy-registration service; or
    - Showed that the domain names had redacted registrant information; or
    - Showed that the domain names contained no registrant name, organization, or address information; or
    - Showed that the domain names were never registered (or at least were not registered when the emails were sent) and so the email headers were forged to show those purported sending domain names; or
    - Showed that the domain names:
        - Listed a purported registrant organization and such organization was not registered as a business entity or fictitious business name with the relevant state or local government authority, as determinable through that authority's publicly available database(s);
        - Listed no registrant organization and the registrant's name was neither an individual person's name nor registered as a business

entity or fictitious business name with the relevant state or local government authority, as determinable through that authority's publicly available database(s); and/or

- Listed a purported registrant address that did not correspond to a valid, deliverable address as determinable through the United States Postal Service's publicly available address database;

- Belong to email service providers so that a query of the WHOIS database would only reveal the identity of the email service provider, as opposed to the entity or individual operating the account from which the email was sent;

*– and/or –*

- The emails' headers were forged so as to show purported sending domain names that belong to third parties that actually exist, but those third parties had nothing to do with the sending of the emails.

*– and/or –*

- The emails' From Names assert the emails were sent by entities or individuals who did not send the emails.

*– and/or –*

- The emails' Subject Lines contained the following or substantially similar text asserting past dealings and prior relationships between Plaintiffs and JGW, or citing information that JGW could only have if there were past dealings and prior relationships, or were otherwise misleading as to the true subject matter of the spams, which is *new customer acquisition* for JGW:

  - "[Name], Resolve Your $15,000 Debt for Less Than You Owe!"
  - "Call for your $24,000 debt relief consultation [Name]"
  - "Dear [NAME] - Regarding Your Current Debt - New Options Are Available"
  - "Give yourself the gift of resolving your credit card debt"
  - "lisha1st Lower Your Debt Payments See If Youre Eligible"
  - "Take Control of Your Debt - We're Here to Help!"
  - "re: your credit card bill"
  - "Welcome to JGWentworth."
  - "Verification  qcnk"
  - "JGW Inquiry Confirmation for Jordy Stark"
  - "Reaching out about your debt resolution options"
  - "Say "hello" to JG and "goodbye" to debt"
  - "JGW Inquiry Confirmation for [Name that is not the Plaintiff's name]"
  - "You have a new message on TikTok"

- "Christop, get your instant savings estimate"
- "Marty, get your instant savings estimate"

122. Excluded from the Class are:

- Defendants' owners, officers, directors, legal representatives, employees, co-conspirators, successors, subsidiaries, and assigns.

- Any judge, justice, or judicial officer presiding over this matter and the members of their immediate families, and judicial staff.

123. **Numerosity and Ascertainability.** The Class is so numerous that individual joinder of all members is impracticable. Fed. R. Civ. Proc. 23(a)(1). There are currently **60** putative Class members (*see* **Exhibit F**, incorporated herein by reference) who collectively received at least **228** unlawful JGW spams.

124. **Commonality and Predominance.** Common questions of law and fact exist as to all members of the class and predominate over any questions that affect only individual members of the class. There is a well-defined community of interest in the questions of law and fact involved affecting the class, and these common questions predominate over any questions that may affect individual class members. Fed. R. Civ. Proc. 23(a)(2), (b)(3). Common questions of fact and law include, but are not limited to, the following:

a. How did JGW's spammers acquire the lists of email address to which they sent commercial email advertisements in which JGW advertised?

b. Did JGW obtain direct consent from the owners of those email addresses, before advertising in emails sent to those email addresses?

c. Did JGW have a preexisting or current business relationship with the owners of those email addresses, before advertising in emails sent to those email addresses?

d. Are the domain names used to send the JGW spams untraceable to the actual senders?

e. Are the headers of the JGW spams forged?

f. Do the From Names contain false or misrepresented information?

g. Does JGW have knowledge (or constructive knowledge) that the Subject Lines in the JGW spams are likely to mislead a reasonable recipient as to the contents of the emails?

h. Does JGW have knowledge (or constructive knowledge) that the Subject Lines in the JGW spams are likely to mislead a reasonable recipient as to the true subject matter of the emails?

i. Did JGW design and implement reasonably effective practices and procedures to prevent violations of Section 17529.5?

j. How does JGW know if those practices and procedures are reasonably effective?

k. Did JGW's marketing partners design and implement reasonably effective practices and procedures to prevent violations of Section 17529.5?

l. How do JGW's marketing partners know if those practices and procedures are reasonably effective?

125. **Typicality.** Plaintiffs' claims are typical of the claims of the members of the Class because Plaintiffs and Class members received the same or similar spams during the same general time period advertising JGW, and were similarly affected. JGW similarly violated the statutory rights of Plaintiffs and all Class members when they received JGW's unlawful spams. Plaintiffs expect that Defendants' forthcoming affirmative defenses will be typical and apply equally as to Plaintiffs' claims and Class members' claims. Defendants acted, and continue to act, on grounds that apply generally to Plaintiffs and the Class. Fed. R. Civ. Proc. 23(a)(3).

126. **Fairness and Adequacy.** The representative parties will fairly and adequately protect the interest of the Class. Plaintiffs have no interests adverse to that of the Class. Plaintiffs have retained counsel with experience in handling complex class actions and multi-party litigation and prosecuting false advertising consumer actions. Plaintiffs and their counsel are committed to vigorously prosecuting this Action on behalf of the Class. Fed R. Civ. Proc. 23(a)(4).

127. **Superiority.** Additionally, a Class action is superior to other available methods for the fair and efficient adjudication of the controversy. Individual joinder of all Class members is impractical. Even if individual Class members had the resources to pursue individual litigation, it would be unduly burdensome to the courts in which the individual litigation would proceed. Individual litigation magnifies the delay and expense to all parties in the court system of resolving the controversies created by JGW. The Class Action device allows a single court to provide the benefits of unitary adjudication, judicial economy, and the fair and efficient handling

of all Class members' claims in a single forum. The conduct of this Action as a Class Action conserves the resources of the parties and of the judicial system and protects the rights of the Class members. Furthermore, for many, if not most, a Class Action is the only feasible mechanism that allows an opportunity for legal redress and justice. Adjudication of individual Class members' claims against JGW would, as a practical matter, be dispositive of the interests of other members not parties to the adjudication, and could substantially impair or impede the ability of other Class members to protect their interests. Although individual Class members will claim different statutory damages based on how many spams each received, there are common issues as to liability and the methodology for calculation would be identical and simple: $1,000 per spam. Fed. R. Civ. Proc. 23(b)(1), (b)(3).

## COUNT I: VIOLATIONS OF SECTION 17529.5

**(By Plaintiffs and Class Members, Against Defendants JGW and DOES 1-100)**

128. Plaintiffs and Class members hereby incorporate paragraphs 1-127 as though set forth in full herein.

129. The statute of limitations for plaintiffs seeking liquidated damages for violations of Section 17529.5 is one year. *Hypertouch*, 192 Cal. App. 4th at 845. Plaintiffs (and Class members) received the spams for which they sue: a) Within one year prior to filing the Complaint on November 23, 2026 (i.e. on or after November 23, 2025); b) More than one year prior to filing the Complaint on November 23, 2026 *but* JGW agreed to extend the statute of limitations for these spams through November 23, 2026.

130. JGW and DOES 1-100 advertised in at least **118** unsolicited commercial email advertisements that Plaintiffs received, and at least **228** that putative Class members received, for a total of **346**, at their California electronic mail addresses that had: a) Materially false, misrepresented, and/or forged information contained in or accompanying the email headers; and/or b) Subject Lines that are materially misleading as to the contents or subject matter of the spams, as follows:

| PLAINTIFF | COUNT | PLAINTIFF | COUNT | PLAINTIFF | COUNT |
|---|---|---|---|---|---|
| Applewhite | 15 | Hilliard | 7 | Venegas | 3 |
| Brice-Harris | 29 | Jones | 43 | Williams | 3 |
| DiCerbo | 8 | McGregor | 1 | **CLASS REPS** | **118** |
| Henderson | 8 | Nixon | 1 | Class Members | 228 |
| | | | | **TOTAL** | **346** |

131. The unlawful elements of these spams represent willful acts of falsity and deception, rather than clerical errors.

132. JGW is strictly liable for its marketing partners/agents' unlawful spamming.

133. The California Legislature set liquidated damages at $1,000 per spam, and the *Balsam* court affirmed that $1,000 per spam (plus attorneys' fees) is proper for Section 17529.5 violations.

134. Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

135. Plaintiffs and Class members seek reimbursement of their costs and attorneys' fees, as authorized by Section 17529.5(b)(1)(C).

136. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Cal. Code of Civil Procedure § 1021.5. **Ten** named Plaintiffs individuals collectively received at least **118** JGW spams, and putative Class members received at least **228** more, for a total of **346**. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages. Although Cal. Code of Civil Procedure § 1021.5 generally authorizes attorneys' fees for a prevailing party, a prevailing defendant in an unfair competition lawsuit[13] such as this one cannot recover attorneys' fees

[13] Cal. Business & Professions Code § 17529.5 is part of Section 17500 (false advertising law), which is expressly incorporated into Section 17200 (unfair competition law).

under Section 1021.5. *Walker v. Countrywide Home Loans Inc.*, 98 Cal. App. 4th 1158, 1164 (2d Dist. 2002). Separately, even if Defendants were to prevail in this Action, they still could not recover their attorneys' fees under Cal. Code of Civil Procedure § 1021.5 (enacted 1977) because Section 17529.5 (enacted 2003) and its one-way attorneys' fees provision is both more recent and more specific than Cal. Code of Civil Procedure § 1021.5. *Department of Fair Employment & Housing v. Cathy's Creations Inc.*, 54 Cal. App. 5th, 404, 412-416 (5th Dist. 2020).

137. WHEREFORE, Plaintiffs pray for judgment against these Defendants as hereinafter set forth.

## COUNT II: AIDING AND ABETTING VIOLATIONS OF SECTION 17529.5

**(By Plaintiffs and Class Members, Against Defendants ATWAVE, DARBIAN, DIRECT AGENTS, DM, and DOES 101-1,000)**

138. Plaintiffs and Class members hereby incorporate paragraphs 1-137 as though set forth in full herein.

139. The statute of limitations for plaintiffs seeking liquidated damages for violations of Section 17529.5 is one year. *Hypertouch*, 192 Cal. App. 4th at 845. Plaintiffs (and Class members) received the spams for which they sue within one year prior to filing the Complaint on November 23, 2026 (i.e. on or after November 23, 2025).

### A. The Spammers Aided and Abetted JGW's Unlawful Spamvertising

140. The *spammers (actual senders)* – DOES 101-700 – aided and abetted JGW's unlawful spamvertising in at least **two** unsolicited commercial email advertisements that they sent to Plaintiffs, and **11** that they sent to putative Class members, for a total of **13**, at their California electronic mail addresses that had: a) Materially false, misrepresented, and/or forged information contained in or accompanying the email headers; and/or b) Subject Lines that are materially misleading as to the contents or subject matter of the spams, as follows:

| PLAINTIFF | COUNT | PLAINTIFF | COUNT | PLAINTIFF | COUNT |
|---|---|---|---|---|---|
| Applewhite | 0 | Hilliard | 0 | Venegas | 0 |
| Brice-Harris | 0 | Jones | 0 | Williams | 1 |
| DiCerbo | 0 | McGregor | 1 | **CLASS REPS** | **2** |
| Henderson | 0 | Nixon | 0 | Class Members | 11 |
| | | | | **TOTAL** | **13** |

141. The *spammers* knew that JGW was going to commit torts – advertising in unlawful spams in violation of Section 17529.5 – against Plaintiffs and Class members, because it was these Defendants who, on information and belief, created and sent the unlawful spams. In most cases, it was these Defendants' acts (e.g. sending spams from proxy-registered domain names) that constituted the violations of Section 17529.5 alleged herein.

142. The *spammers* substantially assisted JGW in advertising in criminally unlawful spams in violation of Section 17529.5. In fact, on information and belief, it was these Defendants who created and sent the unlawful spams. In most cases, it was these Defendants' acts (e.g. sending spams from proxy-registered domain names) that constituted the violations of Section 17529.5 alleged herein.

143. The conduct of the *spammers* was a substantial factor in causing harm to Plaintiffs and Class members – i.e., the violation of their statutory right to be free from receiving unlawful spams – because their conduct caused JGW to violate Section 17529.5 by advertising in the unlawful spams at issue that Plaintiffs and Class members received.

## B. <u>The Spam Networks Conspired with the Spammers to Aid and Abet JGW's Unlawful Spamvertising</u>

144. The *spam networks* – ATWAVE, DARBIAN, DIRECT AGENTS, DM, and DOES 701-900 – conspired with the spammers/actual senders to aid and abet JGW's unlawful spamvertising in at least **two** unsolicited commercial email advertisements that they sent to Plaintiffs, and **11** that they sent to putative Class members, for a total of **13** (as above). On information and belief, the spam networks and the spammers agreed to share the benefits and the risks of the spamming. The spam networks and the spammers formed these conspiracies by virtue of entering agreements together.

145. The spam networks effectuated the conspiracies by serving as a middleman between the spammers and JGW by, for instance: a) Contracting with the spammers to send spams promoting JGW; b) Transferring advertising content (e.g. From Names, Subject Lines, graphics) and tracking codes from JGW to spammers whom the networks knew would be sending spams to recipients whom the spammers had no reason to believe ever gave direct consent to JGW to receive their emails or had preexisting or current business relationships with JGW; c) Knowingly and deliberately directing clicks on the links in the spams to JGW in Pennsylvania; and d) Transferring affiliate commissions generated by the spamming from JGW back to the spammers. The spam networks knew that the spammers were going to aid and abet JGW with respect to advertising in unlawful spams, and permitted and ratified such conduct. But for the spam networks' conspiracies with the spammers to aid and abet JGW's unlawful spamming, the unlawful spams would not have been sent and Plaintiffs' statutory rights would not have been violated.

146. Plaintiffs and Class members were harmed (the violation of their statutory right to be free of receiving unlawful spams) by the spammers' aiding and abetting JGW advertising in unlawful spams and the spam networks are responsible for the harm because they were part of a conspiracy to aid and abet JGW's unlawful spamvertising.

147. The spam networks were aware that the spammers (and others) planned to aid and abet JGW's unlawful spamvertising.

148. The spam networks agreed with the spam networks (and others) and intended that the aiding and abetting of JGW's unlawful spamvertising be committed.

**C. DOES 901-1,000 Conspired with the Spammers to Aid and Abet JGW's Unlawful Spamvertising**

149. DOEs 901-1,000 are neither spammers nor spam networks, but otherwise aided and abetted, or conspired to aid and abet, JGW's violations of Section 17529.5.

**D. As to Spammers, Spam Networks, and DOEs 901-1,000**

150. The California Legislature set liquidated damages at $1,000 per unlawful spam, and the *Balsam* court affirmed that $1,000 per spam (plus attorneys' fees) is proper for Section 17529.5 violations.

151. These Defendants have not established and implemented, with due care, practices and procedures to effectively prevent advertising in unlawful spams that violate Section 17529.5 that would entitle them to a reduction in statutory damages.

152. Plaintiffs and Class members seek reimbursement of their costs and attorneys' fees, as authorized by Section 17529.5(b)(1)(C).

153. The attorneys' fees provision for a prevailing spam recipient is typical of consumer protection statutes and supported by Cal. Code of Civil Procedure § 1021.5. **Ten** named Plaintiffs individuals collectively received at least **two** JGW spams, and putative Class members received at least **11** more, for a total of **13**. By prosecuting this action, Plaintiffs expect to enforce an important right affecting the public interest and thereby confer a significant benefit on the general public or a large class of persons. The necessity and financial burden of private enforcement is such as to make the award appropriate, and the attorneys' fees should not, in the interest of justice, be paid out of the recovery of damages. Although Cal. Code of Civil Procedure § 1021.5 generally authorizes attorneys' fees for a prevailing party, a prevailing defendant in an unfair competition lawsuit[14] such as this one cannot recover attorneys' fees under Section 1021.5. *Walker v. Countrywide Home Loans Inc.*, 98 Cal. App. 4th 1158, 1164 (2d Dist. 2002). Separately, even if Defendants were to prevail in this Action, they still could not recover their attorneys' fees under Cal. Code of Civil Procedure § 1021.5 (enacted 1977) because Section 17529.5 (enacted 2003) and its one-way attorneys' fees provision is both more recent and more specific than Cal. Code of Civil Procedure § 1021.5. *Department of Fair Employment & Housing v. Cathy's Creations Inc.*, 54 Cal. App. 5th, 404, 412-416 (5th Dist. 2020).

154. WHEREFORE, PLAINTIFFS pray for judgment against these Defendants as hereinafter set forth.

---

[14] Cal. Business & Professions Code § 17529.5 is part of Section 17500 (false advertising law), which is expressly incorporated into Section 17200 (unfair competition law).

## PRAYER FOR RELIEF
(Against All Defendants)

A. A Court Order declaring that JGW and DOES 1-100 violated Section 17529.5 by advertising in unlawful spams sent to Plaintiffs that promoted JGW, its websites, and its services.

B. A Court Order declaring that DOES 101-700 (the spammers) aided and abetted JGW's violations of Section 17529.5.

C. A Court Order declaring that ATWAVE, DARBIAN, DIRECT AGENTS, DM, and DOES 701-900 (the spam networks) conspired with the spammers to aid and abet JGW's violations of Section 17529.5.

D. A Court Order declaring that DOES 901-1,000 aided and abetted, or conspired to aid and abet, JGW's violations of Section 17529.5.

E. Judgment in Plaintiffs' and the Class's favor, and jointly and severally against JGW and DOES 1-100, in the amount of $1,000 liquidated damages for each of **346** unlawful spams (according to proof), as authorized by Section 17529.5(b)(1)(B)(ii), for a total of **$346,000**, as follows:

| PLAINTIFF | JDGMNT | PLAINTIFF | JDGMNT | PLAINTIFF | JDGMNT |
|---|---|---|---|---|---|
| Applewhite | $15,000 | Hilliard | $7,000 | Venegas | $3,000 |
| Brice-Harris | $29,000 | Jones | $43,000 | Williams | $3,000 |
| DiCerbo | $8,000 | McGregor | $1,000 | **CLASS REPS** | **$118,000** |
| Henderson | $8,000 | Nixon | $1,000 | Class Members | $228,000 |
| | | | | **TOTAL** | **$346,000** |

F. Judgment in Plaintiffs' and the Class's favor, and against each of Defendants 101-700 (the spammers), jointly and severally with JGW and DOES 1-100, in the amount of $1,000 liquidated damages for each of **13** unlawful spams (according to proof) for which that Defendant aided and abetted JGW's unlawful spamvertising, for a total of **$13,000**.

G. Judgment in Plaintiffs' and the Class's favor, and against each of Defendants ATWAVE, DARBIAN, DIRECT AGENTS, DM, and DOES 701-900 (the spam networks), jointly and severally with JGW and DOES 1-100, in the amount of $1,000 liquidated damages for each of **13** unlawful spams (according to proof) for which that Defendant conspired with the spammers to aid and abet JGW's unlawful spamvertising, for a total of **$13,000**.

H. Judgment in Plaintiffs' and the Class's favor, and against each of Defendants DOES 901-1,000, jointly and severally with JGW and DOES 1-100, in the amount of $1,000 liquidated damages for each of **13** unlawful spams (according to proof) for which that Defendant aided and abetted, or conspired to aid and abet, JGW's unlawful spamvertising, for a total of **$13,000**.

I. Costs of suit and attorneys' fees, as authorized by Section 17529.5(b)(1)(C).

J. Such other and further relief as the Court deems proper.

**JURY DEMAND**

Plaintiffs demand a trial by jury on all issue so triable.

Date: November 23, 2026

By: */s/ Barry L. Cohen*
Barry L. Cohen (PA I.D. No. 68864)
ROYER COOPER COHEN BRAUNFIELD
Three Logan Square
1717 Arch Street, Suite 4700
Philadelphia, PA 19103
bcohen@rccblaw.com
*Attorneys for Plaintiffs and the Proposed Class*

By: */s/ Daniel Balsam*
Daniel Balsam (pro hac vice forthcoming)
BALSAM LAW PC
2601C Blanding Ave. #271
Alameda, CA 94501
(415) 869-2873
legal@danbalsam.com
*Attorneys for Plaintiffs and the Proposed Class*

By: */s/ Jacob Harker*
Jacob Harker (pro hac vice forthcoming)
HARKER LAW CORPORATION
268 Bush Street #3732
San Francisco, CA 94104
(415) 624-7602
jacob@harkercounsel.com
*Attorneys for Plaintiffs and the Proposed Class*